## PLAINTIFFS' STATUS CONFERENCE MEMORANDUM AND MEMORANDUM  IN OPPOSITION TO DEFENDANTS' EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiffs/Counterclaim-Defendants JENNY WU ("Ms. Wu") and MARY YANG ("Ms. Yang") (collectively "Plaintiffs"), by and through their attorney, Deeley King Pang & Van Etten, hereby submit this memorandum as a Status Conference Memorandum and a Memorandum In Opposition To Defendant/Counterclaimant WON PAK'S ("Defendant's" or "Mr. Pak's") Emergency Application for Temporary Restraining Order ("TRO") and Preliminary Injunction, filed July 21, 2011 ("Def.'s TRO").

## I. STATUS CONFERENCE MATTERS

### A.    Preliminary Injunction

Plaintiffs' position is that there is no need to schedule a hearing on Defendants' Application for Preliminary Injunction, for the reasons set forth in our memorandum, below.

However, should a hearing be scheduled, Plaintiffs wish to advise the Court and counsel that they desire to file a motion for preliminary injunction themselves, to be heard at the same time, so an order may be entered in Plaintiffs' favor, should the Court deem that appropriate after briefing.  Among other things, Plaintiffs will request an order that Mr. Pak not interfere with the operations of the franchise store, that Mr. Lippe deliver to the members of the MKAW all

1

communications between Mr. Pak representing the MKAW and Mr. Lippe, during the period that Mr. Lippe represented MKAW, that Mr. Lippe be ordered to disgorge all monies received from MKAW in his representation of Mr. Pak, a member of MKAW in dispute with Ms. Yang, the other primary member of MKAW, and that Mr. Lippe be declared in conflict of interest in representing both MKAW and a member the subject of a claim by MKAW, to wit, Mr. Pak. All of these matters regarding Mr. Lippe have been the subject of e-mails from Plaintiffs' counsel over the past month or two.

**B.    Timing of Noticed Depositions, Other Discovery, and the Preliminary Injunction Hearing; Request for Scheduling Conference the Week of August 15, 2011.**

Defendants' counsel Mr. Lippe has noticed the deposition of Henry Wu, of Dallas, Texas, and a 30(b)(6) deposition of an entity called Hugesen Polymer, for August 3, 2011. Mr. Lippe kindly advised counsel for Plaintiffs that he would be willing to "discuss rescheduling of the depositions if necessary to avoid specific conflicts in scheduling." We thank him for that, and advise the Court and Mr. Lippe that Mr. Van Etten has a long-scheduled trip to the ABA Annual Meeting, followed by a visit to his son in Boston, from August 3 to August 14, 2011. Decl. of Alan Van Etten ¶ 4. The depositions of Henry Wu and Hugesen Polymer have nothing to do with the injunction, and indeed we question their relevance at all.

2

Plaintiffs would like to depose persons such as Sam Musso and others in Honolulu. We would also like to serve written discovery, prior to most of the depositions.

We request that depositions and other discovery be scheduled at a scheduling conference to take place the week of August 15, 2011. We request that the hearing on the preliminary injunction, if one is set, also be set at that time, so any discovery needed prior to that hearing be able to be conducted in a reasonable and efficient manner.

Plaintiffs will be prepared, as the Court requested, to discuss subject matter jurisdiction at the Status Conference.

Due to time constraints, Plaintiffs may not have listed all proposed topics. Plaintiffs request the opportunity to supplement orally at the Conference.

## II. INTRODUCTION TO MEMORANDUM IN OPPOSITION TO DEFENDANT'S TRO

This case involves a dispute between two members – Ms. Yang a 50% member and Mr. Pak a 40% – of a three member limited liability company, MKAW Holdings, LLC ("MKAW"). *See* Decl. of Won Pak ¶ 3; Decl. of Alan Van Etten ¶ 5. The third member, Tracy Chiang ("Ms. Chiang") owns the remaining 10% through a small family-owned entity, CJT International Ltd. *See* Decl. of Won Pak ¶ 3. MKAW owns and operates a Yogurtland franchise on Kalakaua Avenue, which sells frozen yogurt. *See* Def.'s TRO 2. MKAW was

3

formed as a Texas manager-managed limited liability company in August 2009 and began operating the Yogurtland store in the beginning of 2010. *See* Exhibit "A", MKAW Operating Agreement ("OA"); Decl. of Alan Van Etten. Originally, Ms. Yang and Mr. Pak were the only Members, they were both Managers, and Mr. Pak was the Chief Executive Manager. *See* Decl. of Won Pak ¶ 2. Subsequently, Mr. Pak sold 10% of his Membership interest to Ms. Chiang, who became a Member but not a Manager, and Mr. Pak remained as the Chief Executive Manager. Decl. of Tracy Chiang ¶ 2.

This dispute initiated because Mr. Pak has failed to repay a $150,000 promissory note in favor of Plaintiffs and has failed to fulfill his capital contribution to MKAW. *See* Complaint. The original complaint, filed in Texas, asked for the dissolution of MKAW, but shortly after the case was transferred to Hawaii, Plaintiffs made it clear they did not wish to pursue that remedy, as is would be to the disadvantage of both parties. Decl. of Alan Van Etten ¶ 6. Plaintiffs requested Defendant consent to a First Amended Complaint but were forced to file a motion requesting leave of the Court because Mr. Pak was unwilling to provide written consent to the amendment. Decl. of Jedediah J. Strong ("Jed Strong") ¶¶ 2-3.

After opposing Plaintiffs' suggestion to resolve this matter through some sort of alternative dispute resolution, Defendant finally agreed to mediation

sa3483a.doc

and requested Charles Crumpton act as mediator.  Mediation began on June 27, 2011, the same day as the Rule 16 Scheduling Conference.  *Id.* at ¶ 4.

The mediation, however, has not yet proved successful.  At the request of the Yogurtland Franchisor (the "Franchisor"), a telephonic conference was held on July 21, 2011 at 12:30 p.m. HST at which the Franchisor, Ms. Yang, Mr. Pak, and the parties counsel were present.  *Id.* at ¶ 9.  The Franchisor expressed its desire to quickly resolve this case and suggested the parties hold an "auction" amongst themselves to have one party buy-out the other's interest in MKAW.  *Id.* at ¶ 11.  Although Ms. Yang immediately agreed, Mr. Pak did not.  *Id.* at ¶ 11.

Without being able to resolve their disputes, the parties have been forced to continue litigating.  On July 21, 2011, at approximately 11:15 a.m. HST, Plaintiffs delivered a consent, Exhibit "B" hereto, addressed to Mr. Pak and signed by both Ms. Yang and Ms. Chiang – together owning a 60% interest in MKAW,– to MKAW's principal place of business, which removed Mr. Pak as a Manager and as the Chief Executive Manager of MKAW.  Exhibit "B"; Decl. of Jed Strong ¶ 5.  At about that time, Mr. Pak electronically filed his Emergency Application for TRO and Preliminary Injunction.  Decl. of Jed Strong ¶ 8.

sa3483a.doc

## III. <u>ELEMENTS JUSTIFYING TRO</u>

Injunctive relief is an "extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). The tests for a TRO and injunctive relief are "substantially identical," *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001), and require the movant to prove (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter*, 555 at 21. Furthermore, the "'possibility' [of irreparable harm] standard is too lenient. [The United States Supreme Court's] frequently reiterated standard requires [movants] seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Id.* at 22 (italics in original).

## IV. <u>ARGUMENT</u>

Defendant cannot meet his burden to justify his request for a TRO or a preliminary injunction for any of the six acts he delineates in his motion. Plaintiffs are either entitled, through the MKAW Operating Agreement ("Operating Agreement"), to take the actions Mr. Pak wishes to enjoin or have not and have no intention to take the actions which Mr. Pak wishes to enjoin. Defendant's motion is not based in law or fact and should be denied.

6

**A.      Mr. Pak Was Appropriately Removed as a Manager and as the Chief Executive Manager of MKAW.**

The first two requests in Mr. Pak's TRO seek an injunction prohibiting Plaintiffs from "(1) removing or threatening to remove Won Pak as Chief Executive Manager of MKAW Holdings, LLC, [and] (2) removing or threatening to remove Won Pak as manager of the operations of the Yogurtland franchise store owned and operated by MKAW." Def.'s TRO at 1. These requests, however, should be denied because Mr. Pak has no likelihood of success on the merits, preliminary relief will not prevent any alleged harm to Defendant or MKAW, the equities do not tip in Defendant's favor, and this is not a matter of public importance. *See Winter*, 555 at 21.

**1.      Mr. Pak is Unlikely to Succeed on the Merits.**

Mr. Pak is extremely unlikely to succeed on the merits of his claim because under Texas law and pursuant to the Operating Agreement, Ms. Yang and Ms. Chiang had authority, and properly exercised said authority, to remove Mr. Pak as a Manager and as the Chief Executive Manager of MKAW.

Because MKAW is limited liability company organized under Texas law, Texas law governs the "internal affairs and the liability of its managers, members, and their transferees." HRS § 428.1001(a).

7

sa3483a.doc

The Operating Agreement provides that a Manager may be "removed for any reason by a majority vote of the Members as defined by ARTICLE 4 . . . ."[1] *See* Exhibit "A", OA at 11.   Furthermore, Texas law also permits the members to remove a manager for any reason.   *See* Tex. Bus. Orgs. § 101.304 ("[A] manager of a limited liability company may be removed, with or without cause, at a meeting of the company's members called for that purpose."); *see also id.* § 101.306 (giving the class or group of members entitled to elect managers the right to remove the managers).

As admitted by Mr. Pak, Ms. Yang owns a 50% capital interest in MKAW, and Ms. Chiang owns a 10% capital interest in MKAW.   *See* Decl. of Won Pak ¶ 3.   Therefore, Ms. Yang and Ms. Chiang constitute a majority "of the Members as defined by ARTICLE 4" and can remove Mr. Pak as a Manager and as the Chief Executive Manager of MKAW.   *See* Exhibit "A", OA at 11.

Because Ms. Yang and Ms. Chiang clearly have authority to elect and remove the Managers of MKAW, they were within their authority to remove Mr. Pak without calling a formal meeting of the Members of MKAW.   Texas law provides:

---

[1] Article 4.1 states, "By a vote of the Members holding a majority of the capital interests in the Company . . . shall elect so many Managers as the Members determine, but no fewer than one, with one Manager elected by the Members as Chief Executive Manager."  Exhibit "A", OA at art. 4.1.

> [A]n action my be taken without holding a meeting, providing notice, or taking a vote if a written consent or consents stating the action to be taken is signed by the number of . . . members . . . necessary to have at least the minimum number of votes that would be necessary to take the action at a meeting at which each . . . member . . . entitled to vote on the action is present and votes.

Tex. Bus. Orgs. § 101.358.  As the two members who made up the "majority of the capital interests," *see* Exhibit "A", OA at art. 4.1, Ms. Yang and Ms. Chiang had full power and authority to sign a consent removing Mr. Pak as a Manager and as the Chief Executive Manager of MKAW and electing Ms. Yang, who was already a Manager, as the Chief Executive Manager of MKAW.   Tex. Bus. Orgs. § 101.358.

Finally, pursuant to Texas Business Organizations Code Section 6.203, on July 21, 2011, Ms. Yang and Ms. Chiang had the signed consent hand delivered to MKAW's principal place of business at 2490 Kalakaua Ave., Honolulu, Hawaii 96815, addressed to Mr. Pak, Decl. of Jed Strong, at which time the removal of Mr. Pak became effective. Tex. Bus. Orgs. § 6.203.

Upon being removed as a Manager and as the Chief Executive Manager of MKAW, pursuant to the Operating Agreement, Mr. Pak was to "take no part what[so]ever in the control, management, direction, or operation of the Company's affairs . . . ." Exhibit "A", OA at art. 4.2. Mr. Pak remains a Member of MKAW, but his managerial role has been terminated. "The Managers may from time to time seek advice from the Members, but they need not accept such advice .

9

. . ." *Id.* at art. 4.2; *see also* Exhibit "D", Email from Mary Yang to Won Pak (July

23, 2011, 3:58 p.m. HST); Decl. of Tracy Chiang ¶ 5.

### 2.    Mr. Pak is Unlikely to Suffer Irreparable Harm.

Besides the fact that Mr. Pak is unlikely to prevail on a claim

attempting to prohibit Ms. Yang and Ms. Chiang from exercising their right to

remove Mr. Pak as a Manager of MKAW, Defendant's TRO should be denied

because it is not likely that MKAW will suffer irreparable harm. *See Winter*, 555

at 21.

Defendant alleges that removing him as Chief Executive Manager

"will cause direct, immediate, severe, and irreparable injury to MKAW." Def.'s

TRO at 5.  The only support Defendant provides for this assertion is Mr. Pak's

declaration in which he claims MKAW will suffer harm "because there is nobody

else available who can handle and oversee the day to day operations of the store."

Decl. of Won Pak ¶ 18.  This assertion, however, is patently false.  Not only have

Plaintiffs been exceptionally careful not to act in any way that might jeopardize the

franchise, as it is in the best interest of both parties to keep the franchise operating,

Exhibit "D", Emil from Mary Yang, the on-sight store manager, John Gilliam

("Mr. Gilliam"), has been actively involved in managing the store's operations for

over one year and is more than capable of continuing that operation.  Furthermore,

contrary to Mr. Pak's claim that the relationship with the Yogurtland Franchisor

(the "Franchisor") will be put in jeopardy, Decl. of Won Pak ¶ 18, the Franchisor has been completely informed of the facts of this case and has remained neutral, not opposing Plaintiffs' actions.   Decl. of Jed Strong ¶ 10.   Specifically, the Franchisor has indicated it is completely neutral as to whether Mr. Pak or Ms. Yang is the Chief Executive Manager and as to whether or not John Gilliam remains as store manager to run the store, once Mr. Pak is out. *Id.* at ¶ 10.

Also, Mr. Pak's belief that having an owner/manager of the franchise is "an essential element required by the franchise agreement" is also inaccurate. Because MKAW, the franchisee, is an entity, the franchisee need only "designate an individual on whom Franchisor may rely for personal active management of the franchised business . . . ." Exhibit "C" art. 8.4.  The Franchisor is well aware that Mr. Gilliam has been designated as such a person, and the Franchisor has made no objection. Decl. of Jed Strong ¶ 10.

Most importantly, Mr. Pak was relieved of his responsibilities of managing MKAW on July 21, 2011 and there have been no issues whatsoever with the operation of the Yogurtland store, proving Mr. Pak's claims of irreparable harm are unfounded.  Decl. of John Gilliam.  Both Mr. Gilliam, the Store Manager, and Ms. Chiang, MKAW's CPA, report that the store has been operating as well after July 21, when Won Pak was removed, as before.  Decl. of John Gilliam; Decl. of Tracy Chiang.

sa3483a.doc

3.      **No Balance of Equities Tips in Mr. Pak's Favor, and This Matter Does Not Involve a Public Interest.**

As to the third and forth elements justifying a TRO, there is no evidence to suggest that any balance of equities tips in Mr. Pak's favor or there is any public interest associated with Mr. Yang and Ms. Chiang's decision to remove Mr. Pak as a Manager and Chief Executive Manager of MKAW.

B.      **Without Authorization from Ms. Yang, Mr. Pak Has No Right to Perform Services Requiring Compensation from MKAW.**

Mr. Pak's third injunctive request attempts to enjoin Plaintiffs from "(3) refusing to pay Won Pak a reasonable compensation for his services in managing the Yogurtland franchise." Def.'s TRO at 1-2. Neither a TRO nor an injunction are applicable, however, because Mr. Pak is no longer a Manager and has no authority to perform "services in managing" the store. Exhibit "B". Without the authority to perform managing services for MKAW, Mr. Pak has no claim to compensation for future services and cannot win on the merits of such a claim, will not suffer irreparable harm that can be remedied by a TRO, and cannot find relief in equity. Therefore, Defendant's motion should be denied. *Winter*, 555 at 22.

Although the Operating Agreement is hardly a work of art, it clearly assigns the sole responsibility for the operations of the business to the Managers.

4.2 **MEMBERS.** The liability of the Members shall be limited as provided under the laws of the Texas Limited Liability statutes.

12

> **Members that are not Managers shall take no part whatever in the control, management, direction, or operation of the Company's affairs and shall have no power to bind the Company.** The Managers may from time to time seek advice from the Members, but they need not accept such advice, and at all times the Managers shall have the exclusive right to control and manage the Company. No Member shall be an agent of any other Member of the Company solely by reason of being a Member.

OA at art. 4.2 (emphasis added).

Mr. Pak has been receiving compensation for his services and the services of his wife, in relation to the operation of MKAW. He has been paid for those services while he was CEM and has not complained about the amount, so Plaintiffs do not understand Mr. Pak's intent as to his third injunctive request.

Furthermore, Mr. Pak offers no support for his claim that Plaintiffs have, or plan on refusing to pay Mr. Pak for the services he has performed. Not only does such a claim lie against MKAW, as the entity required to make the payment, Mr. Pak offered no evidence to support a finding of the likelihood of the irreparable harm necessary for granting a TRO. Also, even if such a claim were justified, it is not the subject of a TRO because it can be properly remedied through money damages. *See Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 852 (9th Cir. 2009) ("Typically, monetary harm does not constitute irreparable harm.").

sa3483a.doc

Mr. Pak states he believes the total value of the past services he has performed "should be at least $140,000."[2] Decl. of Won Pak ¶ 4. The value of his past services, however, is completely irrelevant to this present motion as it deals solely with money damages. *See id.* Without any supporting evidence, especially evidence supporting the likelihood of irreparable harm, Defendant has failed to prove the elements necessary for a TRO.

**C.   Plaintiffs Have Not and Are Not Attempting to Interfere with Mr. Pak's Business Relationship or Dealings with the Franchisor.**

Defendant's fourth TRO request, prohibiting Plaintiffs from "(4) interfering with or attempting to interfere with, directly or indirectly, the business relationship and dealings between Pak and MKAW with the franchisor, Yogurtland USA," Def.'s TRO at 2, has no basis and law or fact and does not warrant a TRO. Because Plaintiffs have not attempted to interfere with Mr. Pak's relations with the Franchisor, nor do they plan on attempting to interfere with the relation, there is absolutely no evidence to support the allegation.   Therefore, Mr. Pak will not succeed on the merits of such a claim, and the TRO should be denied. *Winter*, 555 at 22.

Contrary to Mr. Pak's allegations, Plaintiffs have been especially careful to keep the Franchisor appraised of their intentions in this lawsuit and have

---

[2] Mr. Pak does not offer any supporting evidence for this claim, nor does he mention the amounts already credited to his capital contribution into MKAW and the salary he has received in connection with his work for MKAW.

sa3483a.doc

refrained from any action that might put into jeopardy MKAW's franchise. *See* Exhibit "D", Email from Mary Yang. In fact, the only action by either party that could have jeopardized the relationship with the Franchisor was committed by Mr. Pak when he sold Ms. Chiang a 10% interest in MKAW without first offering the interest to the Franchisor, pursuant to the franchise agreement. *See* Exhibit "C" at arts. 12.6 and 12.6.

Furthermore, on July 21, 2011, both Ms. Yang and Mr. Pak, and their attorneys, participated in a conference call with the Franchisor in which the Franchisor explicitly stated it was going to remain neutral and expressed its desire to assist the parties in any way possible to quickly resolve the dispute. Decl. of Jed Strong ¶ 10.

**D.**   **Plaintiffs Are Entitled to Communicate with the Employees Working at MKAW's Yogurtland Franchise.**

Defendants fifth request, a request for an injunction prohibiting Plaintiffs from "(4) [sic] communicating with the employees of the Yogurtland franchise store owned and operated by MKAW," Def.'s TRO at 2, is completely unfounded. It is extremely unlikely Defendant would prevail on the merits of such an argument. Besides the arguments stated above explaining that Mr. Pak is no longer a Manager and has no managerial control of MKAW, such an injunction would be a violation of Plaintiffs' Constitutional right to free speech. U.S. Const. amend I. Mr. Pak offers no evidence to even remotely support the need for such an

15

injunction, nor does he claim a likelihood of any irreparable harm if the TRO is not granted. Also, there is no balance of equities tipping in Mr. Pak's favor, and an injunction on free speech is clearly not in the public's favor.

### E.       Plaintiffs Have Not Defamed Mr. Pak.

Defendants final request, an injunction prohibiting Plaintiffs from "(5) [sic] defaming, disparaging, or making derogatory comments regarding Pak to any employee of the Yogurtland franchise store owned and operated by MKAW, or to the [F]ranchisor, Yogurtland USA, pending final trial hereof," Def.'s TRO at 2, is unwarranted. Not only have Plaintiffs refrained from committing any sort of defamation, but Mr. Pak has utterly failed to support his claim with any evidence. Similar to Mr. Pak's other requests for injunctive relief, without any evidence to even show the likelihood of success on the merits of his claim or the likelihood of irreparable harm, Mr. Pak is not entitled to an injunction prohibiting defamation. *See e.g., Greenway University, Inc. v. Greenway of Arizona, L.L.C.,* No. 11–cv–01055–CMA–KLM, 2011 WL 2669174 at *4 (D. Colo. July 7, 2011) ("Thus, to the extent that Plaintiff relies on its defamation claim as a basis for injunctive relief, Plaintiff has not met its burden of establishing a likelihood of success on this count.").

sa3483a.doc

**F.     Mr. Lippe Is in a Conflict of Interest by Representing Both Mr. Pak and MKAW.**

Defendants have finally addressed the issue of Mr. Lippe's conflict of interest.  Plaintiffs first raised this issue with Mr. Lippe in May of 2011, Decl. of Alan Van Etten, and are of the position that Mr. Lippe knew, or should have known, of the conflict at the initiation of this case, the dual representation is a conflict of interest that is not waiveable, and Mr. Lippe violated his ethical and legal responsibilities by accepting funds from MKAW for the services he provided for Mr. Pak's individual defense.

**1.     Mr. Lippe Knew or Should Have Know of the Conflict of Interests Created by Representing Both Mr. Pak and MKAW and Should Not Have Accepted the Representation of MKAW.**

A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

Haw. Rules of Prof. Conduct, Rule 1.7(a).

Although clients can sometimes give informed consent to a conflicting representation, *id.* at 1.7(a)(2), such an option is  not always available. *Id.* at Comment 5 ("[W]hen a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved

17

cannot properly ask for such agreement or provide representation on the basis of the client's consent.").

Mr. Pak was a current client of Mr. Lippe before Mr. Lippe was retained to represent MKAW in this matter. At the time Mr. Lippe entered into an attorney-client relationship with MKAW, he knew, or should have known, of the substantial risk that his representation of both Mr. Pak and MKAW would be directly adverse to both parities. Therefore, Mr. Lippe should not have entered into the relationship with MKAW. *See* Haw. Rules of Prof. Conduct, Rule 1.7 Comment 4 ("A possible conflict does not itself preclude the representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client."). In fact, that substantial risk of a directly adverse relationship came to fruition in the first pleading Mr. Lippe filed on behalf of Mr. Pak and MKAW.

In Defendants' Original Answer and Counterclaim, Mr. Lippe recognized that Won Pak had "capital requirements [to] MKAW." Def.s' Original Answer and Countercl. at ¶ 46. Because Mr. Pak's capital requirements remain unfulfilled, MKAW could easily assert a claim against Mr. Pak to recover those capital contributions in this same litigation, which would have created a conflict.

18

Also, Mr. Lippe highlighted a claim Mr. Pak now fully asserts against MKAW by alleging Won Pak "has yet to receive fair compensation" for the work he has performed for MKAW.[3]  *Id.* at ¶ 58.  Because these examples show claims that are directly adverse between Mr. Pak and MKAW, it was a violation of Mr. Lippe's ethical obligations to accept the representation of MKAW.  *See* Haw. Rules of Prof. Conduct, Rule 1.7 Comment 5; *see e.g., El Camino Resources, Ltd. v. Huntington Nat. Bank*, 623 F. Supp. 2d 863 (W.D. Mich. 2007) ("the conflict 'must truly be unforeseeable,' and that the conflict must 'truly be no fault of the lawyer.'").

Furthermore, at the latest, Mr. Lippe should have removed himself from representing both Mr. Pak and MKAW in early May 2011 when he was informed Plaintiffs did not intend to pursue the dissolution of MKAW but were planning on asserting derivative claims against Mr. Pak on behalf of MKAW. Decl. of Alan Van Etten ¶ 6; Haw. Rules of Prof. Conduct, Rule 1.16 ("[A] lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if: (1) the representation will result in violation of the Rules of Professional Conduct or other law . . . .").

---

[3] The third request for injunctive relief made in Def.'s TRO is really a claim against MKAW.  As MKAW is the entity which makes payment for managerial services, Defendant's third claim is attempting to enjoin MKAW from withholding such payments.

19

sa3483a.doc

> When a single lawyer or law firm undertakes to represent both
> the individual and corporate defendants in a derivative action, at
> least two potential ethical problems arise. First, there exists . . .
> a potential conflict of interest between the individual and
> corporate defendants, and second, there is the threat that
> confidences and secrets obtained from each client may be
> jeopardized because of the dual nature of the representation.

*Cannon v. U.S. Acoustics Corp.*, (N.D. Ill. 1975), 398 F. Supp. 209, 220, *rev'd and*

*rem'd on other grounds* 532 F.2d 1118 (7th Cir. 1976); *see also Rowen v. LeMars*

*Mut. Ins. Co. of Iowa*, 230 N.W.2d 905 (Iowa 1975) ("It is also well established

that a potential conflict of interest exists when the same law firm attempts to

represent the nominal corporate defendant in a derivative action while at the same

time representing the corporate insiders accused of wrongdoing.").

Because Mr. Lippe was in a conflict of interest representing both Mr.

Pak and MKAW, once he was informed Plaintiffs intended to assert derivative

claims, rather than seek disillusion, not only should Mr. Lippe have withdrawn his

representation, but Mr. Lippe is not entitled to any fees for service he has

performed since the conflict arose. *See generally Moses v. McGarvey,* 614 P.2d

1363, 1372 (Alaska 1980) ("It is well established that an attorney, disqualified on

conflict-of-interest grounds, generally is barred as a matter of public policy from

receiving any fee from either of the opposed interests."); *see also Goldstein v.*

*Lees,* 46 Cal. App. 3d 614, 120 Cal.Rptr. 253, 255 (1975); *cf. Kidney Association*

*of Oregon v. Ferguson,* 315 Or. 135, 843 P.2d 442, 447 (1992) ("[I]t is the breach

sa3483a.doc

of fiduciary duty owed to a client, rather than a violation of a disciplinary rule, that may result in a reduction or loss of a fee.").

**2. The Operating Agreement Prohibited Mr. Lippe from Accepting Funds from MKAW for Mr. Pak's Defense.**

Assuming, *arguendo*, Mr. Pak was within his right to retain Mr. Lippe to represent MKAW at the beginning of this case, neither he nor Mr. Lippe were allowed to use or accept funds from MKAW for the defense of Mr. Pak.

In relation to MKAW's ability to indemnify its members and managers, the Operating Agreement states:

> **INDEMNIFICATION.** The Company shall indemnify any person who was or is a party defendant or is threatened to be made a party defendant, pending or completed action, suit or proceeding, whether civil, criminal, administrative, or investigative (other than an action by or in the right of the Company) **by reason of the fact that he is or was a Member of the Company, Manager,** employee or agent of the Company, or is or was serving at the request of the Company, for instant expenses (including attorney's fees), judgments, fines, and amounts paid in settlement actually and reasonably incurred in connection with such action, suit or proceeding **if the Members determine that he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interest of the Company,** and with respect to any criminal action proceeding, has no reasonable cause to believe his/her conduct was unlawful. The termination of any action, suit, or proceeding by judgment, order, settlement, conviction, or upon a plea of "no lo Contendere" or its equivalent, shall not in itself create a presumption that the person did or did not act in good faith and in a manner which he reasonably believed to be in the best interest of the Company, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his/her conduct was lawful.

21

Exhibit "A", OA at art. 4.8 (emphasis added).   Therefore, without an affirmative

determination by the Members of MKAW that Mr. Pak was acting "in good faith

and in a manner he reasonably believed to be in or not opposed to the best interest

of the Company," in relation to allegations contained in either the original

complaint filed in Texas, or Plaintiffs proposed First Amended Complaint, Mr. Pak

had no authority to pay for his defense with MKAW funds. *Id.* at art. 4.8.

As MKAW's purported attorney, Mr. Lippe should have enforced the

Operating Agreement and should have required a vote by the Members of MKAW

before accepting funds for the services he performed to defend Mr. Pak. *See In re

Trask*, 53 Haw. 165, 488 P.2d 1167 (Hawaii 1971) (stating attorneys are fiduciaries

of their clients).    Not only did Mr. Lippe breach his ethical duties by blindly

accepting payment from MKAW for his defense of Mr. Pak, *see* Haw. Rules of

Prof. Conduct, Rule 1.8(f), but he breached the fiduciary duties he owed toward

MKAW.

> **3.    Accepting Monies from MKAW for the Representation of
> Won Pak Violated MKAW's Rights and/or Assisted Won
> Pak to Perpetuate Fraudulent Activities and/or Breaches of
> His Fiduciary Duties.**

"A lawyer who counsels or assists a client to engage in conduct that

violates the rights of a third person is subject to liability . . . ." Restatement (Third)

*Law Governing Lawyers* § 94.  In this case, while Mr. Pak was the Chief Executing

Manager of MKAW, he used his power to hire Mr. Lippe to represent MKAW, in

sa3483a.doc

spite of a conflict of interest, and used MKAW funds to pay for both MKAW's defense and his own personal defense without receiving permission from the Members of MKAW.  Paying for his defense with MKAW funds, without Member permission, was in violation of Article 4.8 of the Operating Agreement and was a breach of his fiduciary duties.

Mr. Lippe assisted Mr. Pak in said breaches by knowingly permitting Mr. Pak to pay for his own defense from MKAW company funds, and consequently, Mr. Lippe should be liable to MKAW for the misappropriated funds. *See id.*; *id.* at § 96 Comment g ("[T]he lawyer may not counsel or assist a breach of any fiduciary obligation owed by the constituent to the organization."); *Newburger, Loeb & Co. v. Gross*, 563 F.2d 1057, 1080 (2d Cir. 1977), cert. denied, 434 U.S. 1035 (1978) (stating that, for civil liability to nonclient, lawyer must have acted "maliciously, fraudulently, or knowingly to tread upon the legal rights of others," lawyer here liable for inducing and participating in client's breach of fiduciary duty).

G.    **Mr. Lippe Must Provide Time Sheets for His Work Representing MKAW and Must Refund All Monies Paid Out of MKAW Funds for Work Not Completed on Behalf of MKAW.**

As Mr. Pak requests, Plaintiffs also agree "the Court [should] authorize MKAW to pay such portion of Mr. Lippe's fees as found by the Court to be its **proper share**." Decl. of Won Pak at ¶ 21 (emphasis added).  For the Court

23

to properly do so, Mr. Lippe must produce his timesheets for the work he has provided and must verify that he has not received monies from MKAW other than for the work he purportedly completed for MKAW.

When the Court reviews the timesheets for the work Mr. Lippe purportedly performed for MKAW, Plaintiffs respectfully reminds the Court that Mr. Lippe recognized, from the initiation of the case, that "Plaintiffs have plead no cause of action against MKAW upon which relief may be granted . . . ." Notice of Removal at ¶ 6.   Also, if Mr. Lippe really were performing legal services for MKAW, rather than Mr. Pak, he should have accepted Plaintiffs' offer to drop the lawsuit and proceed with ADR.   Instead of performing services in the best interest of MKAW, by quickly terminating the lawsuit, Mr. Lippe has refused to amicably resolve the alleged dispute with MKAW,[4] and has performed all his duties as if Mr. Pak were his only client.

## IV.  **CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request this Court deny Mr. Pak's Emergency Application for Temporary Restraining Order and Preliminary Injunction, filed July 21, 2011.

---

[4] Mr. Lippe continues to rely on the fact that the original complaint, filed in Texas, is the "operative pleading" and alleges a claim of dissolution to justify his need to be counsel for MKAW.  Decl. of Jed Strong.

sa3483a.doc

DATED: Honolulu, Hawaii; July 25, 2011.


/s/ Alan Van Etten
ALAN VAN ETTEN
WILLIAM J. DEELEY

Attorneys for Plaintiffs/
Counterclaim-Defendants
JENNY WU and MARY YANG